MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MATTHEW M. YELOVICH (NYBN 4897013)
Deputy Chief, Criminal Division

MARJA-LIISA OVERBECK (CABN 261707)
LEIF DAUTCH (CABN 283975)
ASEEM PADUKONE (CABN 298812)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    mari.overbeck@usdoj.gov
    leif.dautch@usdoj.gov
    aseem.padukone@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-CR-328 YGR |
|     Plaintiff, | **UNITED STATES' OPPOSITION TO MOTION TO ADMIT RECORDINGS OF PAST STATEMENTS** |
|     v. | |
| DAVID CERVANTES, JAMES PEREZ, GEORGE FRANCO, and GUILLERMO SOLORIO, | |
|     Defendants. | |

**I.     BACKGROUND**

The United States hereby files this brief to oppose the defendants' motion to admit the recordings of past statements made by witness Joshua Cortez that have already been admitted through the testimonial record as prior inconsistent statements. During cross-examination, the defense impeached Mr. Cortez by playing audio recordings of prior inconsistent statements given to law enforcement. When questioned about those past statements, Mr. Cortez acknowledged making those past statements and explained any purported inconsistencies between his testimony and his past statements.

First, the defense played Exhibit 630-3, an audio clip in which Mr. Cortez told law enforcement that Chuco Guillen had closed the books on NF membership.

(AUDIO RECORDING WAS PLAYED)

Q: Mr. Cortez, so it -- in hearing Exhibit 630-3, you told a law enforcement in November of 2021 that Chuco told you that the books were closed, correct?

A: Yes.

Q: And so when you testified previously, you had indicated that Franco said the books were closed, correct?

A: That's correct.

Q: And was that just a misstatement?

A: I think it was a misstatement when I told them the original time where I said Chuco.

Q. So you testified -- so this was November 2021 when you spoke with law enforcement. And you're saying that you incorrectly said Chuco during that time?

A. Well, like I said, it was a lot of information that I was processing. So some of the dates, some of the times, the people, you know, it took me a while to grasp the information because, you know, it's a lot of information that was, you know, years ago. And I put all that information in the back of my head. So to rebring it all up, you know, it takes time to redevelop it, you know, to get it in your head and remember things.

Cortez July 15, 2024 Transcript, 116:19 to 117:16.

Mr. Cortez was later asked about his statements which suggested that he had met Sammy Luna at San Quentin, after playing excerpts from Exhibits 626-1 and 626-3. Again, Mr. Cortez did not deny making the statements in the recording and explained the apparent inconsistency between his testimony and what he said on the recording.

> Q. And you told law enforcement that you developed a good relationship with Mr. Luna at the cages, right?
>
> A: When I heard that, I can see how that got mixed up, but I never said the cages -- I was previously talking about how they laid over, and then I incorporated Sammy. So I can see how you would misinterpret that.
>
> Q: And you incorporated Sammy because Sammy was released from the SHU at roughly around the same time, right?
>
> A: That's correct.
>
> Q: Or at the same time, I should say.
>
> A. At -- yes.
>
> Q. And Sammy went to San Quentin at the same time as Chuco, Puppet, and Pato, correct?
>
> A. That's not correct. He went to DVI.

Cortez July 15, 2024 Transcript, 120:24 to 121:12.

…

> Q. In the clip that we just played, the last one, it says, "I really didn't talk too much, you know, but those people, especially Sammy, we developed a really good relationship." Correct?
>
> A.    That's correct.

Cortez July 15, 2024 Transcript, 123:14 to 123:18.

Defense counsel also asked Mr. Cortez about statements he made during his post-arrest

interview. Mr. Cortez could not remember whether he had stated, "I got to be devious and I got to be devious." Cortez Testimony July 17, 2024 (58:8-12). Counsel then played an audio clip from Exhibit 772-7, after which Mr. Cortez again acknowledged having made the statement in the recording.

(AUDIO RECORDING WAS PLAYED)

> Q: And Mr. Cortez, in playing that clip, does that – an accurate statement of what you told law enforcement at that time?
>
> A: Yes.

Cortez July 17, 2024 Transcript, 59:10 to 59:15.

In all three instances, Mr. Cortez has already been impeached using his past statements and the original audio recordings were published for the jury.

**II.    ARGUMENT**

Prior inconsistent statements "may be used to impeach, but should not be treated as having any substantive or independent testimonial value." *United States v. Tavares*, 512 F.2d 872, 873 (9th Cir. 1975). Under Federal Rule of Evidence 613(b), extrinsic evidence of a witness's prior inconsistent statement may be admissible "only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." However, "trial judges may find extrinsic evidence of a prior inconsistent statement unnecessary in some circumstances where a witness freely acknowledges the inconsistency when afforded an opportunity to explain or deny." Fed. R. Evid. 613, Advisory Committee Notes (2024 Amendments). "The district court has broad discretion over whether to admit extrinsic evidence to rebut a witness' direct testimony, particularly on a matter collateral to the case." *United States v. Higa*, 55 F.3d 448, 452 (9th Cir. 1995).

Courts have frequently limited the manner in which prior statements are admitted for impeachment purposes. In *United States v. Tanner*, the district court allowed certain tapes to be played at trial to impeach a witness only in the event that the witness denied making those past statements. *Tanner*, 471 F.2d 128, 136 (7th Cir. 1972). The court approved the playing of some tapes, but instructed the defense not to play portions of the tape that did not specifically impeach the witness. The

Seventh Circuit held that the district court's reasoning was "sound." Notably, there is no discussion about admitting the recordings into evidence after the impeachment purpose has been served.

In *United States v. Strode*, the court held that the district court properly exercised its discretion to exclude a witness's inconsistent declaration. *See United States v. Strode*, 229 F.3d 1161 at *1, n. 3 (9th Cir. 2000) (unpublished) (citing *United States v. George*, 975 F.2d 11431, 1432 (9th Cir. 1992)). The district court concluded that the witness had already been impeached during her testimony using her past statements, rendering the declaration cumulative. *See id.* The same reasoning holds true here. Mr. Cortez has already been impeached with his prior statements, and the recordings of those statements have already been played for the jury. Admitting the recordings at this point would be cumulative.

Further, admitting the recordings so that they can go back to the jury room carries a prejudicial effect that outweighs the minimal probative value under Rule 403. The recordings have little probative value at this point: Mr. Cortez has admitted to making those statements, the recordings of those statements have already been published, and the defense cross-examined Mr. Cortez about the purported inconsistencies.[1] On the other hand, admitting the recordings at this stage would be unduly prejudicial. The jury does not get a recording of Mr. Cortez's sworn testimony and his explanation of the purported inconsistencies on the stand. By admitting the recordings, the jurors would then have recordings of his past statements while needing to rely on their memories about his under oath trial testimony. This imbalance is unfairly prejudicial and will confuse the jury.

During the parties' meet and confer, the defense pointed to *United States v. Jones*, 739 F. App'x 376, 380 (9th Cir. 2018) (unpublished) to support its position that the recordings of the prior statements should be admitted into evidence. *Jones* further supports the government's position. In *Jones*, the court held that the district court did not err by allowing the government to proffer prior inconsistent statements from a police report to impeach a testifying witness because the statements would be admitted under Rule 613(b). *Id*. The *Jones* court's brief discussion of Rule 613(b) is focused on the admission of the *statement* used for impeachment, rather than admission of the report itself. What this Court has already

---

[1] Had, for example, Mr. Cortez denied that it was his voice on those recordings, then the original recordings would have more significant probative value for admission. But that is not the case here.

1  admitted is no different than what the court did in *Jones*. This Court admitted the prior statements through the testimonial record, and going further, permitted the jury to listen to the recordings of the prior statements. This allowed the jury to conduct a real time comparison between Mr. Cortez's prior statements and his testimony on the stand. Admitting the recordings at this stage would be cumulative and allow the jurors to place undue weight on the prior statements over Mr. Cortez's sworn testimony.

### III.   CONCLUSION

For the foregoing reason, the Court should deny the defendants' motion to admit Exhibits 626-1, 626-3, 630-3, and 772-7.

DATED: July 25, 2024

Respectfully submitted,

MARTHA BOERSCH
Chief, Criminal Division

_____/s/_____
MARJA-LIISA OVERBECK
LEIF DAUTCH
ASEEM PADUKONE
Assistant United States Attorneys